No. 3--97--0697

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

WESTERN STATES INSURANCE ) Appeal from the Circuit Court

COMPANY, ) of Du Page County.

) 

Plaintiff and )

Counterdefendant-Appellee, )

)

v. )  No. 97--MR--116

)

PAUL ZSCHAU, NANCY ZSCHAU, and )

PETER ZSCHAU, )

) Honorable

Defendants and ) Bonnie M. Wheaton,

Counterplaintiffs-Appellants.) Judge, Presiding.

PRESIDING JUSTICE GEIGER delivered the opinion of the court:

The defendants-counterplaintiffs, Paul Zschau, Nancy Zschau, and Peter Zschau, appeal from the August 20, 1997, order of the circuit court of Du Page County granting summary judgment in favor of the plaintiff-counterdefendant, Western States Insurance Company (Western), on its complaint for declaratory judgment.  The trial court found that Western was not obligated to pay the Zschaus underinsured motorist benefits under the provisions of their automobile insurance policy.  We affirm.

The facts relevant to the disposition of this appeal are as follows.  Paul and Nancy Zschau are Illinois residents who purchased a personal automobile insurance policy issued by Western.  The policy provided underinsured motorist coverage limits of $250,000 per person.  The Zschaus’ son, Peter Zschau, resided in his parents’ home and qualified as an additional insured under the terms of the policy.

On July 12, 1994, Peter Zschau was a passenger in an automobile owned and operated by Rachel Duever.  Peter sustained injuries when Duever’s vehicle was involved in an accident near Hokah, Minnesota.  As a result of the accident, Peter suffered a herniated disc and fracture requiring fixation and fusion; gastrointestinal tract and duodenal hematoma injuries requiring surgery; and a peptic ulcer caused by his medication.  Peter’s medical bills totaled over $110,000.

Duever, who was also an Illinois resident, was insured under a policy issued by Farmers Insurance Company (Farmers).  Following the accident, Farmers paid Duever’s full bodily injury liability limits of $250,000 to Peter Zschau. 

Peter then submitted a claim to Western for underinsured motorist benefits under his parents’ policy.  Because Peter had already collected benefits in an amount equal to the underinsured coverage limits of his parents’ policy, Western denied the claim and filed the instant action for declaratory judgment on February 27, 1997.  In its complaint, Western alleged that its policy did not provide coverage because Peter’s damages did not arise out of the use of an "underinsured motor vehicle" as defined by the policy.  The relevant policy provision provided as follows:

" 'Underinsured motor vehicle' means a land motor vehicle or 'trailer' of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage."

Such policy language complied with the requirements of the Illinois Insurance Code.  See 215 ILCS 5/143a--2(4) (West 1996).

On May 2, 1997, the Zschaus filed an answer denying the material allegations of Western’s complaint and also filed a counterclaim for declaratory judgment.  In their counterclaim, the Zschaus alleged that Western was obligated to provide underinsured motorist coverage under the "out of state" coverage provision located in the liability coverage section of their policy.  That provision provided as follows:

"OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which ‛your covered auto’ is principally garaged, we will interpret your policy for that accident as follows.

A.  If the state or province has:

1.  A financial responsibility or similar law specifying limits of liability for ‛bodily injury’ or ‛property damage’ higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2.  A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

B.  No one will be entitled to duplicate payments for the same elements of loss."

Pursuant to this policy language, the Zschaus alleged that, because the accident occurred in Minnesota, Western was bound by the no-fault insurance laws enacted by the Minnesota legislature.  Under Minnesota law, underinsured motorist coverage is an "add-on" coverage available to compensate an injured person for damages suffered but not recovered.  Minn. Stat. Ann. §65B.43, subd. 17 (West 1997); see also 
Davis v. American Family Mutual Insurance Co.
, 521 N.W.2d 366, 368-69 (Minn. Ct. App. 1994).  The Zschaus therefore alleged that they were entitled to "add on" the underinsured benefits from their Western policy to those benefits already recovered from Duever’s policy. 

On June 27, 1997, Western filed a motion for summary judgment.  In its motion, Western argued that, although the policy did not contain a choice of law provision, Illinois law was the appropriate law to be applied to settle the controversy because Illinois was the state in which the policy was negotiated, issued, and performed.  Western also noted that Illinois was the state in which the insured’s vehicles were registered and principally garaged and the state where the insureds and tortfeasor resided.  Western concluded that, under Illinois law, the Zschaus were not entitled to recover under the policy’s underinsured motorist provisions because Peter’s injuries did not arise out of the use of an "underinsured motorist vehicle," as defined in the policy.

Also on June 27, 1997, the Zschaus filed a motion for judgment on the pleadings.  In their motion, the Zschaus alleged that the "out of state" coverage provision found in the liability coverage section of the policy operated as a general choice of law provision and that Minnesota law should therefore be applied to determine Western’s coverage obligations.  The Zschaus argued that, under Minnesota’s "add on" underinsured motorist coverage law, they could stack their underinsured motorist coverage on top of the $250,000 already recovered from Duever’s policy.

On August 20, 1997, following a hearing, the trial court granted Western’s motion for summary judgment and denied the Zschaus’ motion for judgment on the pleadings.  The trial court found that Illinois law applied, noting that "all of the indicia for choice of law with the exception of the location of the accident seem[ed] to point to the application of Illinois law."  The trial court also found that the "out of state" clause in the liability coverage section of the Western policy was not a choice of law provision that required application of Minnesota’s "add on" underinsured motorist law.  Rather, the trial court found that Duever’s vehicle could not be considered underinsured because Peter had already recovered benefits matching the underinsured motorist coverage limits of the Western policy.  The Zschaus filed a timely notice of appeal.

On appeal, the Zschaus argue that the trial court erred in granting summary judgment on behalf of Western and denying their motion for judgment on the pleadings.  Specifically, they argue that the trial court erred in failing to recognize the "out of state" coverage clause as a choice of law provision which required the application of Minnesota law.  The Zschaus therefore contend that it was improper for the trial court to utilize the significant contacts analysis to apply Illinois law to the instant case.

Summary judgment is proper if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2--1005(c) (West 1996).  An order granting summary judgment should be reversed if the judgment was incorrect as a matter of law, and the standard of review is 
de
 
novo
.  
Quinton v. Kuffer
, 221 Ill. App. 3d 466, 471 (1991).  Similarly, on review of a motion for judgment on the pleadings, the appellate court must determine whether any genuine issue of material fact exists, and, if not, whether the prevailing party was indeed entitled to judgment as a matter of law.  See 
Tim Thompson, Inc. v. Village of Hinsdale
, 247 Ill. App. 3d 863, 890 (1993).

The parties to any insurance agreement, as the parties to any other contract, have the power to contractually define the coverage protection afforded to the insured party.  See 
Community Unit School District No. 5  v. Country Mutual Insurance Co.
, 95 Ill. App. 3d 272, 275-78 (1981).  The terms of an insurance policy must be read according to their plain and ordinary meaning, and the court should not search for ambiguity where there is none.  
Allstate Insurance Co. v. Smiley
, 276 Ill. App. 3d 971, 977 (1995).  If the policy provisions are clear and unambiguous, there is no need for construction and the provisions will be applied as written.  
Smiley
, 276 Ill. App. 3d at 977.  However, an insurance policy is not intended to be interpreted in a factual vacuum and without regard to the purpose for which the insurance policy was written.  
Massachusetts Bay Insurance Co. v. Unique Presort Services, Inc.
, 287 Ill. App. 3d 741, 744 (1997).

An examination of the language contained in the "out of state" coverage provision of the instant policy reveals that it was not intended to be a choice of law provision.  Indeed, the provision contains no language mandating that the policy be interpreted according to the law of the state where the accident occurred.  See generally 
Potomac Leasing Co. v. Chuck’s Pub, Inc.
, 156 Ill. App. 3d 755, 758-59 (1987).  Rather, the plain language of the "out of state" coverage provision provides that, in the event an accident occurs in a state that has a financial responsibility or compulsory insurance law that requires certain minimal amounts and types of coverage, Western would provide that coverage to its insured.  See 
De los Reyes v. Travelers Insurance Cos.
, 135 Ill. 2d 353, 359 (1990).  Contrary to the Zschaus' contentions, we do not believe that this language was intended as a choice of law provision, but was instead inserted to ensure that Western’s insureds would be in compliance with the financial responsibility and compulsory insurance laws of any state in which they drove.

Support for this conclusion can be found in 
De los Reyes
, where our supreme court considered an "out of state" coverage provision similar to the provision contained in the Western policy.  
De los Reyes
, 135 Ill. 2d at 355-56.  In that case, an Illinois resident was injured as a result of an automobile accident in Indiana.  
De los Reyes
, 135 Ill. 2d at 354.  The question on appeal was whether the insurer was obligated to pay $10,000 in bodily injury coverage, as specified in the policy, or $25,000 in bodily injury coverage, as provided under Indiana law.  
De los Reyes
, 135 Ill. 2d at 355-56.  In discussing the "out of state" coverage provisions, the supreme court commented:

"It is apparent in the policy that the purpose of the provisions is to ensure that with the optional coverage defendant’s insureds are in compliance with the financial responsibility and compulsory insurance laws of any State in which they drive.  Thus, the reasonable construction of the policy is that an insured subject to the provisions of the financial responsibility laws of any State would be provided coverage up to the minimum amount of required financial responsibility specified in the statute; similarly, the policy would provide insurance coverage in the amount required by any State’s compulsory insurance law."  
De los Reyes
, 135 Ill. 2d at 359.

After examining Indiana law, the supreme court noted that Indiana’s statutory insurance requirements only applied after a motorist had already been involved in an accident.  
De los Reyes
, 135 Ill. 2d at 356.  Because the insured had no accidents prior to the incident in question, the court held that the Indiana statute did not apply and that the insurer was not obligated to provide $25,000 in bodily injury coverage.  
De los Reyes
, 135 Ill. 2d at 360.  Although the court noted that the "out of state" provision required the insurer to provide the minimum amount of coverage mandated by state law, at no point in its analysis did the court construe this language as a choice of law provision.

Indeed, our research has uncovered no case in which a court has interpreted an "out of state" coverage clause similar to the one herein to be a choice of law provision.  As in 
De los Reyes
, the few courts that have considered such clauses have held that they simply require the insurer to provide the minimum statutorily mandated coverage for nonresident drivers required under the laws of the state in which the accident occurred.  See 
Automobile Club Inter-Insurance Exchange v. State Farm Mutual Automobile Insurance Co.
, 302 Ark. 78, 80, 787 S.W.2d 237, 238 (1990); 
Government Employees Insurance Co. v. Fenton
, 164 Ariz. 440, 441-42, 793 P.2d 1107, 1108-09 (Ariz. Ct. App. 1989)
.  In applying such provisions, these courts have therefore limited their inquiry to a consideration of what minimum coverage must be provided to insureds to comply with the laws of the states in which they drive.  
Fenton
, 164 Ariz. at 441-42, 793 P.2d at 1108-09.  For example, in 
Fenton
, the court did not require the insurer to provide underinsured motorist coverage where such coverage was not required of nonresidents traveling in the state where the accident occurred.  
Fenton
, 164 Ariz. at 441-42, 793 P.2d at 1108-09.  Similarly, in
 
Automobile Club
, the court did not require the insurer to provide additional uninsured motorist coverage where such coverage was not mandatory under the law of the state where the accident occurred.  
Automobile Club
, 302 Ark. at 80, 787 S.W.2d at 238; see also 
Draper v. Draper
, 115 Idaho 973, 976-77, 772 P.2d 180, 183-84 (1989); 
Sotirakis v. United Service Automobile Ass’n
, 106 Nev. 123, 127-28, 787 P.2d 788, 791-92 (1990).

The sole authority that the Zschaus rely upon in support of their contention that the "out of state" coverage clause is a choice of law provision is 
Motorist Mutual Insurance Co. v. Howard
, 110 Ohio App. 3d 709, 675 N.E.2d 51 (1996).  In that case, the question presented was whether an Ohio insurer was obligated to pay its Ohio insured weekly disability benefits in accordance with the no-fault motorist laws of Ontario, Canada, for injuries sustained as a result of an accident that occurred in Ontario.  
Howard
, 110 Ohio App. 3d at 710-11, 675 N.E.2d at 52-53.  In holding that the Ontario no-fault law applied, the court concluded that the plain language of the "out of state" coverage provision required the insurer to provide those " 'required minimum amounts and types of coverages' " needed for lawful vehicular travel within Ontario, including the obligation to pay weekly disability benefits.  
Howard
, 110 Ohio App. 3d at 713, 675 N.E.2d at 54.

Contrary to the Zschaus' characterizations, however, a close reading of 
Howard
 reveals that the court did not hold that the "out of state" coverage clause was a choice of law provision.  Nowhere in the court’s opinion is any language requiring the application of Ontario law, rather than Ohio law, in interpreting the meaning and effect of the relevant policy language.  Rather, the court merely found that, under the "out of state" coverage provision, the insurer was obligated to provide the minimum amounts and types of coverage required for vehicular travel in Ontario.  We believe that such a determination is in harmony with the approach used in those cases already discussed above.  However, to the extent that 
Howard
 may expand the scope of the "out of state" provision beyond this limited inquiry, we decline to follow it as we believe it to be contrary to those principles expressed by our supreme court in 
De los Reyes
.

Additionally, we reject the Zschaus' contention that the "out of state" coverage clause should be read as a choice of law provision because its meaning and intended purpose are ambiguous.  The Zschaus fail to provide any pertinent authority for this contention.  We note that none of the courts construing this type of provision, including 
De los Reyes
, have found the language to be ambiguous or vague.  Rather, each of these courts has found that the plain language of this provision requires that an insured that is subject to compulsory financial responsibility laws of another state must be provided coverage up to the minimum required amount.  See 
De los Reyes
, 135 Ill. 2d at 359; 
Automobile Club
, 302 Ark. at 79-80, 787 S.W.2d at 238.

We therefore turn to a consideration of what coverage Western was required to provide Peter Zschau in order to comply with Minnesota’s financial responsibility and compulsory insurance laws.  The Minnesota No-Fault Act requires that any automobile insurance policy issued in Minnesota must include underinsured motorist benefits.  Minn. Stat. Ann. §65B.49, subd. 3a(1) (West 1997).  The Minnesota legislature has also provided for the situation in which a motor vehicle involved in an accident in Minnesota is insured under a policy written in another state:

"Subdivision 1.  Every insurer licensed to write motor vehicle accident reparation and liability insurance in this state shall *** afford at least the minimum security provided by section 65B.49 to all policy holders, except that in the case of nonresident policyholders it need only certify that security is provided with respect to accidents occurring in this state.

Subdivision 2.  Notwithstanding any contrary provision in it, every contract of liability insurance for injury, wherever issued, covering obligations arising from ownership, maintenance, or use of a motor vehicle *** includes basic economic loss benefit coverages and residual liability coverages *** while the vehicle is in this state ***."  Minn. Stat. Ann. §65B.50 (West 1997).

The purpose of this statute is to ensure compliance with Minnesota’s no-fault rules by foreign insurers.  
Hedin v. State Farm Mutual Automobile Insurance Co.
, 351 N.W.2d 407, 408 (Minn. Ct. App. 1984).

In 
Aguilar v. Texas Farmers Insurance Co.
, 504 N.W.2d 791 (Minn. Ct. App. 1993), the Minnesota Court of Appeals applied this statutory provision to a case analogous to the facts present herein.  In that case, a Texas resident was injured in a Minnesota accident while riding as a passenger in a motor vehicle.  
Aguilar
, 504 N.W.2d at 792.  After exhausting the primary liability coverage on the automobile in which he was riding, the plaintiff sought to collect underinsured motorist coverage from his own Texas carrier.  
Aguilar
, 504 N.W.2d at 792-93.  As in the instant case, the plaintiff argued that, under Minnesota law, the underinsured motorist coverage provided by his Texas policy should be construed as "add on" coverage and that he was therefore entitled to the full limits of the underinsured benefits in addition to those payments he had already received from primary insurance.  
Aguilar
, 504 N.W.2d at 792.  The insurer, on the other hand, argued that the policy required that any underinsured benefits had to be set off by the primary insurance already received.  
Aguilar
, 504 N.W.2d at 792.

The reviewing court in 
Aguilar
 held that the plaintiff was not entitled to "add on" underinsured motorist coverage, noting that section 65B.50 did not require out-of-state policies to provide underinsured motorist coverage to their insureds while their vehicles are in Minnesota.  
Aguilar
, 504 N.W.2d at 793-94.  Rather, the court held that the statute only required nonresident drivers to obtain basic economic loss coverage and residual liability coverage.  
Aguilar
, 504 N.W.2d at 793-94.  As the Texas policy contained all of the statutorily-mandated coverages, the court concluded that any additional coverages, such as underinsured motorist protection, were a matter of contract between the parties.  
Aguilar
, 504 N.W.2d at 794.  As the policy provided only "difference in limits" underinsured coverage, the court refused to rewrite the contract to require "add on" underinsured coverage.  
Aguilar
, 504 N.W.2d at 794; see also 
Hedin
, 351 N.W.2d at 409 (insurers licensed to sell insurance in Minnesota not required to increase amount of uninsured motorist coverage in out-of-state policies to meet the Minnesota statutory minimum when their nonresident insureds are involved in Minnesota accidents).

In light of these authorities, we are compelled to conclude that Minnesota law does not require nonresident automobile owners to carry uninsured or underinsured motorist coverage while driving in Minnesota.  See 
Aguilar
, 504 N.W.2d at 794.  Moreover, we note that the Zschaus do not contest that their Western policy already contained all of Minnesota’s statutorily mandated coverages for economic loss benefits and residual liability coverage.  As the Western policy was already in compliance with Minnesota’s financial responsibility and compulsory insurance laws, we do not believe that the "out of state" coverage provision operates to expand any of Western’s coverage obligations under the policy.  See 
Aguilar
, 504 N.W.2d at 794; 
Fenton
, 164 Ariz. at 441-42, 793 P. 2d at 1108-09.

In the absence of a choice of law provision, we believe that the trial court properly determined that Illinois law governs the instant dispute.  In order to determine the governing law, Illinois courts are required to apply Illinois choice of law rules.  
Society of Mount Carmel v. National Ben Franklin Insurance Co.
, 268 Ill. App. 3d 655, 664 (1994).  Included among the factors to be considered are the location of the subject matter, the place of contract delivery, the domicile of the insured or the insurer, the place of the last act giving rise to a valid contract, and the place of performance.  
Hofeld v. Nationwide Life Insurance Co.
, 59 Ill. 2d 522, 528 (1975).  Unless some other state has a more significant relationship to the transaction, an automobile policy will be governed by the law of the state where the car was intended to be principally located, even if the car is occasionally located elsewhere.  
Allen v. State Farm Mutual Automobile Insurance Co.
, 214 Ill. App. 3d 729, 738 (1991).  Here, there is no real dispute that most of these factors point to Illinois as the appropriate governing law.

The parties agree that, as written, the Western policy does not provide "add on" underinsured motorist coverage.  Moreover, the parties agree that such a policy provision is in harmony with the Illinois Insurance Code.  215 ILCS 5/143a--2(4) (West 1996).  As underinsured motorist coverage is not required for nonresident drivers in Minnesota, the nature of such coverage was a matter of contract between the parties.  
Aguilar
, 504 N.W.2d at 794.  In the Western policy, the contract clearly calls for "difference in limits" underinsured coverage.  As Peter Zschau has already received benefits under Duever’s policy equaling the underinsured limits of the Western policy, we believe the trial court properly determined that Peter’s damages did not arise out of the use of an "underinsured motor vehicle" and therefore conclude that Western was entitled to summary judgment on its complaint for declaratory judgment.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

THOMAS and RATHJE, JJ., concur.