Arthur HEDIN, et al., Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent.

No. C8–83–1363.

Court of Appeals of Minnesota.

July 17, 1984.

Mossey & Dolentz by Dale E. Mossey, St. Cloud, for appellants.

Donovan, McCarthy, Crassweller & Magie, P.A. by Robert K. McCarthy and Brian R. McCarthy, Duluth, for respondent.

Heard, considered and decided by WOZNIAK, P.J., and HUSPENI and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Plaintiffs Sandra and Lee Hedin are Indiana residents injured in a Minnesota accident as passengers in a automobile garaged in Minnesota, owned by a Minnesota resident and operated by Lee Hedin. They

claim full benefits of Minnesota uninsured motorist coverage and asked the trial court to so declare their entitlement to same. Their Indiana carrier, respondent State Farm Mutual Automobile Insurance Company, moved for summary judgment denying the coverage sought by the Hedins. They succeeded and the Hedins appeal. We affirm.

## FACTS

On February 10, 1981, plaintiffs Lee and Sandra Hedin, Indiana residents, were injured in a two-car accident in Minnesota. Lee was driving a motor vehicle owned by plaintiff Arthur Hedin who was a Minnesota resident. Arthur Hedin's vehicle was registered and insured by defendant State Farm in Minnesota. The driver of the other car was uninsured.

Lee and Sandra each owned a vehicle registered and principally garaged in Indiana and also insured by State Farm in Indiana. Both policies included uninsured motorist coverage for the Indiana statutory minimum limits of $15,000 per claimant and $30,000 per accident.

Hedins and two other passengers exhausted the Minnesota uninsured coverage on Arthur Hedin's vehicle and the Hedins received an additional $30,000 on Lee Hedin's coverage. Hedins claim the Indiana policies should be "written up" to the Minnesota statutory minimums of $25,000/$50,000.00 on each of the two Indiana policies, thereby entitling them to additional coverage.

## ISSUE

Whether insurance companies licensed to sell insurance in Minnesota are required to "write up" uninsured motorist coverage issued in other states to the minimum required by Minnesota when their insureds are involved in accidents in Minnesota.

## ANALYSIS

Minnesota No-Fault Act requires that:
Subdivision 1. Every insurer licensed to write motor vehicle accident reparation and liability insurance in this state shall, on or before January 1, 1975, or as a condition to such licensing, file with the commissioner and thereafter maintain a written certification that it will afford at least the minimum security provided by section 65B.49 to all policyholders, except that in the case of non-resident policyholders it need only certify that security is provided with respect to accidents occurring in this state.
Subdivision 2. Notwithstanding any contrary provision in it, every contract of liability insurance for injury, wherever issued, covering obligations arising from ownership, maintenance, or use of a motor vehicle, except a contract which provides coverage only for liability in excess of required minimum tort liability coverages, includes basic economic loss benefit coverages and residual liability coverages required by sections 65B.41 to 65B.71, while the vehicle is in this state, and qualifies as security covering the vehicle.
Minn.Stat. § 65B.50 (1982).

The purpose of this statute is to ensure compliance with Minnesota's no-fault rules by foreign insurers. Steenson, *Minnesota No-Fault Automobile Insurance*, 175–176 (1982), (citing *Uniform Motor Vehicle Accident Reparations Act* § 9, comment (1972)) (discussing legislative history of Minn.Stat. § 65B.50).

The Hedins claim the word "security" in the last clause of section 65B.50(1) refers to all minimum insurance coverage required by section 65B.49(4), which requires insurers to provide uninsured motorist coverage in the amounts of $25,000 per claimant/$50,000 per accident in any insurance policy delivered or renewed in Minnesota. The Hedins' interpretation would require insurance companies selling insurance in Minnesota to provide their insureds from other states the statutory minimum amounts of uninsured motorist coverage required by § 65B.49(4) when those insureds are injured in Minnesota.

State Farm, to the contrary, argues that the word "security" as used in section 65B.50(1) with respect to non-resident poli-

cyholders only refers to basic economic loss benefits required to be included under subdivision 2 of 65B.50. An examination of the statute does indicate that subdivision 2 does not require uninsured motorist coverage under that section and only basic economic loss and residual liability coverage are identified as qualifying "as security covering the vehicle." Minn.Stat. § 65B.50(2).

The Minnesota Supreme Court has already declared the term "security" as used in the exception for non-residents in subdivision 1 of section 65B.50 to be that identified in subdivision 2. *Petty v. Allstate Ins. Co.,* 290 N.W.2d 763 (Minn.1980).

State Farm's interpretation properly reflects the statutory scheme. This interpretation is consistent with other provisions of the No-Fault Act. Section 65B.48 makes basic economic loss benefits and residual liability coverage, as set forth in section 65B.49(3), compulsory. Subdivision 1 of section 65B.48 requires the non-resident owner of a motor vehicle not registered or principally garaged in Minnesota to maintain that type of security whenever the vehicle is operated in Minnesota.

Section 65B.48(1) does not require a non-resident owner of a motor vehicle operating a vehicle in Minnesota to carry uninsured motorist coverage. If a non-resident operating a vehicle in Minnesota need not carry any uninsured coverage, it is unlikely that the legislature intended non-residents to recover uninsured benefits beyond their own uninsured coverage.

### DECISION

State Farm is not required to "write up" Lee and Sandra Hedin's Indiana uninsured motorist policies to the Minnesota statutory minimum.

Affirmed.