*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0527**

Bret Hedrington,
Appellant,

vs.

American Standard Insurance Company of Wisconsin,
Respondent

**Filed December 19, 2016
Reversed and remanded
Worke, Judge**

Hennepin County District Court
File No. 27-CV-13-18760

Mark J. Schneider, Erin F. Musland, Chestnut Cambronne, P.A., Minneapolis, Minnesota; and

Thomas R. Hurwitz, Hurwitz Law Firm, St. Louis Park, Minnesota (for appellant)

Beth K. Bussian, Steven P. Pope, Eden Prairie, Minnesota (for respondent)

Considered and decided by Stauber, Presiding Judge; Worke, Judge; and Bratvold, Judge.

**U N P U B L I S H E D   O P I N I O N**

**WORKE**, Judge

Appellant insured challenges the district court's grant of summary judgment to respondent insurer, arguing (1) a genuine issue of material fact exists as to appellant's residency; (2) respondent is estopped from denying that appellant is a Minnesota resident

with a vehicle principally garaged in Minnesota; and (3) the district court erred in determining that if appellant is a Minnesota resident, appellant knowingly misrepresented material facts on his insurance application. Because a genuine issue of material fact remains as to appellant's residency at the time of his accident, and the district court abused its discretion by allowing, in a dispositive order, an amendment to the pleadings permitting respondent to claim misrepresentation, we reverse and remand for further proceedings.

**FACTS**

In July 2009, appellant Bret Hedrington obtained auto insurance in Wisconsin from respondent American Standard Insurance Company of Wisconsin. American Standard is also licensed to sell insurance in Minnesota. Hedrington listed his parents' Eau Claire, Wisconsin address on his application for the policy. Hedrington was born and raised in Eau Claire, but he has owned a home in Shafer, Minnesota for approximately 20 years.

Hedrington's policy included underinsured motorist (UIM) coverage with a relevant limit of $150,000. The policy included an exhaustion provision stating American Standard would pay under the coverage "only after the limits of liability under any bodily injury liability bonds or policies [had] been exhausted." The policy also included a fraud provision allowing American Standard to void the policy if Hedrington misrepresented a material fact with intent to deceive or breached an affirmative warranty, and American Standard relied upon that misrepresentation or breach or the misrepresentation or breach contributed to "the loss."

According to the agent who sold the policy, Hedrington never said he owned a home in Minnesota or that his vehicle would be principally garaged in Minnesota, but Hedrington

2

did say he intended to purchase a home in Minnesota and would stay with a friend in Minnesota from time to time; the agent told Hedrington to alert him if his address changed. According to the agent, the specific policy was selected and sold to Hedrington because he represented that he lived in Wisconsin and his vehicle would be principally garaged in Wisconsin; his premiums were calculated based upon this information; and the policy would not have been sold if the agent knew Hedrington resided in Minnesota and the vehicle would be principally garaged in Minnesota. Hedrington previously obtained auto insurance from American Standard in Wisconsin in 2008, and Hedrington's parents' Wisconsin address was listed as his residence for that policy as well.

Hedrington has owned a home in Shafer, Minnesota and lived in that home for many years, but the home was struck by lightning and burned down in August 2009. As a result, Hedrington did not live there for some time. After the fire, Hedrington lived with a friend in Shafer. Also, Hedrington leased a home in Minnesota while he waited for his home to be rebuilt.

In September 2009, Hedrington obtained an umbrella policy with American Standard. This policy was obtained in Minnesota and listed Hedrington's Shafer address as his residence. This policy had an endorsement provision, which noted that American Standard would not cover UIM claims unless the policy was endorsed to provide such coverage.

In October 2009, Hedrington was involved in an auto accident in Minnesota; his vehicle was struck by a driver insured through Progressive. That driver eventually settled with Hedrington for $50,000, though the driver's liability limit was $100,000.

In July 2013, Hedrington served a complaint upon American Standard seeking UIM benefits under the July 2009 auto policy and the September 2009 umbrella policy. American Standard moved for summary judgment. The district court granted summary judgement for American Standard, finding that Hedrington could not collect UIM benefits under his July 2009 policy because of the aforementioned exhaustion provision. The district court acknowledged that if Hedrington was a Minnesota resident, the exhaustion provision would be void under Minnesota law and the policy would be reformed to allow Hedrington to collect UIM benefits. But, the district court found that either: (1) the exhaustion provision was valid because Hedrington was a Wisconsin resident; or (2) Hedrington knowingly misrepresented material facts in his insurance application, and the policy was therefore void. The district court found that the UIM benefits under the umbrella policy were not available because Hedrington did not purchase the required endorsement. This appeal follows.

## D E C I S I O N

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. On appeal from summary judgment, appellate courts review de novo "whether there are any genuine issues of material fact and whether the district court erred in its application of the law to the facts." *Commerce Bank v. W. Bend Mut. Ins. Co.*, 870 N.W.2d 770, 773 (Minn. 2015). Appellate courts "view the evidence in the light most favorable to the party against whom summary judgment was

4

granted." *Id.* No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997) (quotation omitted).

## I.

Hedrington argues that a genuine issue of material fact exists as to his residency. As discussed below, Hedrington's residency at the time of his accident is material because it affects the validity of the exhaustion provision contained in his July 2009 policy,[1] which in turn controls access to UIM benefits under that policy. Viewing the evidence in a light most favorable to Hedrington, a genuine issue of material fact exists as to whether Hedrington was a Minnesota resident at the time of his accident.

### *Residency's Impact on the Exhaustion Provision*

Insurers licensed to sell auto insurance in Minnesota must provide certain minimum insurance coverages to Minnesota resident policyholders. Minn. Stat. § 65B.50, subd. 1 (2014). These insurance coverages are outlined in Minn. Stat. § 65B.49 (2014). There are reduced requirements for nonresident policyholders. Minn. Stat. § 65B.50, subd. 1; *Ziegelmann v. Nat'l Farmers Union Prop. & Cas. Cos.*, 686 N.W.2d 563, 567 (Minn. App. 2004), *review denied* (Minn. Dec. 14, 2004). Insurers licensed in Minnesota "must provide nonresident insureds with basic-economic-loss and residual-liability coverages, but are not required to provide UIM coverage." *Ziegelmann*, 686 N.W.2d at 567. Generally, the rule

---

[1] Hedrington did not brief the issue of UIM benefits under his umbrella policy. The district court found that Hedrington conceded he was not entitled to these benefits. This issue is deemed forfeited. *See Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982) (stating that issue that was not briefed was forfeited).

5

in Minnesota is that UIM coverage is not required for nonresidents, and so if nonresidents have UIM coverage, it need not comply with Minnesota law. *Warthan v. Am. Family Mut. Ins. Co.*, 592 N.W.2d 136, 139 (Minn. App. 1999), *review denied* (Minn. July 28, 1999).

Following this rule, if a nonresident insured is injured in an auto accident in Minnesota and the nonresident insured obtained UIM coverage in another state from an insurer licensed to sell in Minnesota, the UIM coverage does not need to comply with Minnesota-resident coverage requirements and the nonresident insured's policy will not be reformed. *Id.* at 137-39. But, if a Minnesota-resident insured is injured in an auto accident in Minnesota, and the insured obtained UIM coverage in another state from an insurer licensed to sell in Minnesota, the resident insured is entitled to the UIM coverage required by Minnesota law. *Schossow v. First Nat'l Ins. Co. of Am.*, 730 N.W.2d 556, 561-62 (Minn. App. 2007). This is true even if the policy was not "'renewed, delivered or issued for delivery, or executed in [Minnesota] with respect to any motor vehicle registered or principally garaged in [Minnesota].'" *Id.* at 561 (quoting Minn. Stat. § 65B.49, subd. 3a(1) (2006)); *see Warthan*, 592 N.W.2d at 139 (noting when a Minnesota resident has an accident in Minnesota, the UIM policy will be reformed to comply with Minnesota law). This is because "Minnesota has a strong policy of extending coverage rather than allowing coverage to be restricted." *Schossow*, 730 N.W.2d at 562.

After his accident, Hedrington settled with the third-party driver for $50,000, which was less than the driver's liability limit of $100,000. The district court found Hedrington could not collect UIM benefits because the exhaustion provision precluded benefits if

6

certain limits of liability were not exhausted. The district court found Hedrington failed to exhaust those limits by settling for $50,000.

However, under Minnesota law the exhaustion provision would be deemed void as against public policy, and Hedrington's policy would be reformed to comply with Minnesota's UIM laws. *Schmidt v. Clothier*, 338 N.W.2d 256, 260-61 (Minn. 1983), *superseded by statute on other grounds*, Minn. Stat. § 65B.49, subd. 4a. The issue then becomes whether or not the exhaustion provision is void in this instance, and a determination of the validity of the exhaustion provision requires a determination of whether Hedrington was a Minnesota resident at the time of his accident.[2]

### Hedrington's Residency at the Time of His Accident

In determining no-fault insurance coverage, residency is a question of fact, and summary judgment is not proper when reasonable persons could reach different conclusions from the evidence. *Mut. Serv. Cas. Ins. Co. v. Wochnick*, 397 N.W.2d 435, 437 (Minn. App. 1986). Residency for purposes of UIM benefits is determined at the time of the accident. *See Schossow*, 730 N.W.2d at 562 (holding that district court did not err in determining that insured was a Minnesota resident at the time of her accident); *Schoer v. W. Bend Mut. Ins. Co.*, 473 N.W.2d 73, 75-76 (Minn. App. 1991) (analyzing party's residency at time of accident for purposes of UIM benefits); *Wochnick*, 397 N.W.2d at 437-38 (analyzing party's residency at time of accident for purposes of UIM benefits).

---

[2] The parties appear to concede that Minnesota law is applicable, and there is not a choice-of-law issue.

7

Viewing the evidence in a light most favorable to Hedrington, a rational factfinder could find Hedrington was a Minnesota resident at the time of his accident. At the time of his accident, Hedrington had owned a home in Minnesota for many years. The home had burned down approximately two months before the accident, so Hedrington lived with a friend in Minnesota and leased a home in Minnesota. In September 2009, approximately one month before the accident, one of American Standard's agents working in Minnesota issued an umbrella policy to Hedrington providing homeowners liability insurance and listing Hedrington's home address in Shafer, MN. This evidence suggests that Hedrington was a Minnesota resident at the time of his accident. Further, in *Schossow*, this court noted people can have more than one residence and "[n]othing in Minn. Stat. § 65B.50 suggests that a person can be a resident of only one state." 730 N.W.2d at 561.

In sum, in viewing that evidence in a light most favorable to Hedrington, a genuine issue of material fact remains as to whether Hedrington was a Minnesota resident at the time of his accident.

**II.**

Hedrington argues American Standard should be estopped from asserting Hedrington did not maintain his residency in Minnesota and keep his vehicle principally garaged in Minnesota because American Standard admitted these facts in the answer. Because the complaint lacked specifics, and Hedrington and the district court were made aware of American Standard's theory of the case, we conclude that American Standard is not estopped from making these assertions.

In the complaint, Hedrington claimed he "maintains a residence in … Minnesota." Hedrington also claimed he "purchased automobile insurance from [American Standard] in order to insure his vehicle principally garaged in Minnesota." American Standard admitted these allegations in its answer.

Pleadings are intended to alert each party to the relevant claims and defenses being offered so that the parties come to trial prepared and ready to address the matters in controversy. *Rogers v. Drewry*, 196 Minn. 16, 19, 264 N.W. 225, 226 (1935). When essential facts are admitted in the pleadings, those facts are not at issue unless the admitting party alerts the court and the other party of a change in position. *Phelps v. Benson*, 252 Minn. 457, 457, 476, 90 N.W.2d 533, 534, 546 (1958).

Here, regarding Hedrington's residence, the complaint was phrased in the present tense; American Standard admitted Hedrington maintained a Minnesota residence at the time of the complaint, not at the time of the accident or purchase of the policy, and American Standard only admitted Hedrington maintained a Minnesota residence, not that Hedrington was a Minnesota resident for purposes of UIM coverage. Further, American Standard, in its motion for summary judgment and other filings, has argued Hedrington was a Wisconsin resident and not entitled to UIM benefits in accordance with Minnesota law. Both Hedrington and the district court were made aware of this position.

Regarding the admission that Hedrington purchased automobile insurance from American Standard in order to insure his vehicle principally garaged in Minnesota, Hedrington again failed to identify the timeframe, the exact vehicle, and the exact insurance policy in that paragraph of the complaint. American Standard, in its motion for summary

9

judgment and other filings, has argued that Hedrington's vehicle involved in the accident was not principally garaged in Minnesota. Again, both Hedrington and the district court were made aware of this position.

In sum, American Standard is not estopped from challenging Hedrington's residency and the place where Hedrington's vehicle was principally garaged because the complaint was not specific, and American Standard took the position in filings that Hedrington, for purposes of UIM coverage, was a Wisconsin resident with a vehicle principally garaged in Wisconsin.

### III.

Lastly, Hedrington argues that the district court erred in concluding, as a matter of law, that Hedrington knowingly misrepresented material facts in his insurance application. Because the district court clearly abused its discretion by granting, in its dispositive order, American Standard's motion to amend the pleadings to allow a claim of misrepresentation, summary judgment was improper.

Fraud and any matter constituting an avoidance are affirmative defenses that must be pleaded appropriately. Minn. R. Civ. P. 8.03. Further, the circumstances constituting fraud or mistake must be stated with particularity. Minn. R. Civ. P. 9.02. This includes pleading all necessary facts underlying each element of a fraud claim. *Hardin Cty. Sav. Bank v. Hous. & Redevelopment Auth.*, 821 N.W.2d 184, 191 (Minn. 2012). Two of the primary purposes for requiring affirmative defenses to be pleaded specifically are to prevent surprise and ensure fairness. *Snyder v. City of Minneapolis*, 441 N.W.2d 781, 788

(Minn. 1989). When an affirmative defense is properly raised, discovery can be undertaken to produce the relevant facts. *Id.*

In this case, American Standard's allegations of fraud were required to be pleaded affirmatively and with particularity. *See Hardin*, 821 N.W.2d at 191 (noting a claim of negligent misrepresentation must be pleaded with particularity); *McBroom v. Al-Chroma, Inc.*, 386 N.W.2d 369, 374 (Minn. App. 1986) (noting misrepresentation must be pleaded with particularity). American Standard first raised the issue of fraud in its summary judgment memorandum of December 8, 2015, arguing that if Hedrington alleged he was not a resident of Wisconsin when he obtained his July 2009 policy, then he misrepresented his residence and the place where his vehicle would be principally garaged in his insurance application, and the policy could therefore be voided under the fraud provision of the policy.

Hedrington denied that a misrepresentation had been made, asserting that he used his parents' Wisconsin address as a mailing address while his home was being rebuilt and asserting that American Standard was alerted to the fact that Hedrington was a Minnesota resident whose vehicle was principally garaged in Minnesota. Further, Hedrington argued that fraud had not been sufficiently pled.

American Standard then cited Minn. Stat. § 60A.08, subd. 9 (2014) as a basis for contract rescission and raised new facts to show that Hedrington had made a misrepresentation, including: (1) a picture and police report showing Hedrington had a Wisconsin license plate at the time of his accident; (2) Hedrington's 2008 insurance application listing a Wisconsin address and a Wisconsin driver's license, and noting that

11

his vehicle would be principally garaged in Wisconsin; (3) an affidavit from the agent who sold Hedrington's July 2009 policy; and (4) insurance claim documents that American Standard claims show Hedrington's home burned down in August 2009.

At the hearing on January 5, 2016, American Standard appeared to offer the theory that Hedrington was intentionally deceptive in representing that he was a Wisconsin resident. Hedrington argued against allowing an amendment of the pleadings. On February 2, 2016, the district court granted summary judgment for American Standard, noting in a footnote that it would allow American Standard to amend its pleading.

A district court's decision to allow an amendment of the pleadings will not be reversed unless there was a clear abuse of discretion. *LaSalle Cartage Co. v. Johnson Bros. Wholesale Liquor Co.*, 302 Minn. 351, 357-58, 225 N.W.2d 233, 238 (1974). Here, the district court had the authority to permit American Standard to amend its pleading. Minn. R. Civ. P. 15.01. Leave to amend a pleading must be given freely when justice so requires. *Id.* However, the discretion to allow an amendment of the pleadings is not unfettered. *Rhee v. Golden Home Builders, Inc.*, 617 N.W.2d 618, 621 (Minn. App. 2000). Given American Standard's failure to plead fraud, the lack of clarity in American Standard's fraud allegations, the untimeliness of American Standard's motion to amend the pleadings, and the fact that Hedrington was offered no opportunity to present evidence after the decision to allow an amendment of the pleadings, Hedrington suffered prejudice and the district court clearly abused its discretion. As such, the matter must be remanded so that Hedrington is apprised of the fraud allegations and given an opportunity to respond.

First, American Standard failed to plead fraud in any form, let alone with the particularity that is required. *See* Minn. R. Civ. P. 9.02. As such, the contours of American Standard's fraud claim were ill defined at the time of the summary judgment hearing. It was unclear if American Standard was relying on Hedrington's insurance application as the source for the misrepresentation, the oral representations made to the agent that sold the policy, or both. It was unclear if American Standard was relying on the contract language as the source for rescission, or Minn. Stat. § 60A.08, subd. 9, or both. It was unclear if American Standard was alleging there was an intent to deceive, or a materially increased risk of loss, or both. *See* Minn. Stat. § 60A.08, subd. 9 (noting a policy may be avoided because of a material misrepresentation only if there was either intent to deceive and defraud or an increased risk of loss).

Second, American Standard did not move the court to allow for an amendment of its pleading until five days before the hearing, which is untimely. *See* Minn. R. Gen. Pract. 115.04(a) (noting nondispositive motions must be filed at least 14 days before the hearing). Further, five days before the summary judgment hearing, American Standard filed a number of supplemental affidavit attachments raising new facts in support of its fraud argument, and it was at this time that American Standard first raised the applicability of Minn. Stat. § 60A.08, subd. 9.

Third, the district court, by granting American Standard's motion to amend the pleadings in the order disposing of the case, effectively closed the door on Hedrington's ability to rebut specific fraud allegations with relevant evidence. The district court found either Hedrington was a Wisconsin resident or he knowingly misrepresented material facts

13

in his insurance application and the policy was therefore void. However, this conclusion ignores the fact that Hedrington could have legitimately listed a Wisconsin address on his insurance application and legitimately affirmed that his vehicle was primarily garaged in Wisconsin at the time the policy was obtained, while still claiming he was a Minnesota resident at the time of his accident. In *Schossow*, the insurance policy was issued to a Fargo address, the policy was never renewed to indicate a Minnesota address despite the fact that the insured was living in Minnesota, the insured renewed her North Dakota driver's license while living in Minnesota, and the insured's vehicle was registered and titled in North Dakota, yet this court still held that it was not error to find the insured was a Minnesota resident. 730 N.W.2d at 558, 562. Further, in *Schossow*, this court noted a person could potentially have more than one residence and be a resident of more than one state. *Id.* at 561.

Lastly, if American Standard's misrepresentation claim is based on the theory that Hedrington was intentionally deceptive in listing a Wisconsin address and affirming that his vehicle was principally garaged in Wisconsin at the time of the policy issuance, there remains a genuine issue of material fact. There is evidence that Hedrington did not intend to deceive American Standard. Hedrington obtained an umbrella policy in September 2009 from American Standard using a Minnesota address, and Hedrington had other dealings with American Standard during this time indicating that Hedrington was not intending to be deceptive about his connection to Minnesota.

A genuine issue of material fact remains on whether Hedrington was a Minnesota resident at the time of his auto accident, and the district court clearly abused its discretion

14

when it permitted American Standard, in a dispositive order, to amend the pleadings so that a claim of misrepresentation could be raised. This matter must be remanded for a determination of Hedrington's residency at the time of his accident. American Standard must plead fraud with sufficient particularity, and Hedrington must be given an opportunity to respond to American Standard's particularized fraud allegation.

**Reversed and remanded.**